IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN A. BERNARDI,

                      Plaintiff,                    ORDER

v.

                                                  08-cv-758-slc

BRIAN KLEIN and
MANDY CAYGILL,

                      Defendants.

---

      Plaintiff John Bernardi is suing officers Brian Klein and Mandy Caygill under 42 U.S.C. § 1983 for events that occurred during a traffic stop and arrest for drunk driving. In an order dated January 12, 2010, I dismissed most of plaintiff's Fourth Amendment claims on the ground that defendants were entitled to qualified immunity because the case law did not clearly establish that they violated plaintiff's constitutional rights. *See* dkt. 63. However, with respect to plaintiff's claim that the initial stop was not supported by reasonable suspicion, I concluded that plaintiff was entitled to a jury trial because, under *his* version of the facts–which the court must accept as true at the summary judgment stage–defendants stopped his car without any individualized suspicion of wrongdoing, which is a clear violation of the Fourth Amendment. *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000).

      Defendants have moved for reconsideration of that decision, arguing that defendant Caygill had reasonable suspicion to stop plaintiff's car because a dispatch officer told Caygill that plaintiff was "a possible drunk driver." Alternatively that argue that they are entitled to qualified immunity. *See* dkt. 64. Because I adhere to the conclusion that it was clearly established that the Fourth Amendment prohibits an officer from stopping a car simply on the basis of a tip of "a possible drunk driver," I will deny defendants' motion.

Defendants relied on the dispatch officer's statement in their summary judgment materials, but the focus of their argument was the collective knowledge doctrine, under which "law enforcement officers are considered to possess information known to other officers but not known to them." *U.S. v. Whitaker*, 546 F.3d 902, 905 (7th Cir. 2008).  Defendants noted that the dispatch officer's comment originated with defendant Klein, who testified that he called the dispatch officer after observing plaintiff driving too slowly and swerving his car.[1]

However, because plaintiff denies that he was doing either of these things, I was required to assume for the purpose of summary judgment that Klein observed no suspicious activities. *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (on motion for summary judgment, court must view facts in light most favorable to nonmoving party). Thus, defendants could not rely on the collective knowledge doctrine because that doctrine would apply only if it were undisputed that Klein himself "possessed a reasonable suspicion justifying a stop." *U.S. v. Hensley*, 469 U.S. 221, 233 (1985).

---

[1] In their summary judgment materials, defendants included a proposed finding of fact that defendant Klein told the dispatch officer that plaintiff "was driving erratically," dkt. 15, at ¶ 36, but I excluded that proposed fact because the affidavit defendants cited did not support it. Dkt. 63 at 3 n.1. In their motion, defendants say that the fact was included in paragraph 20 of Klein's affidavit. Dkt. 65, at 9 n.4.  That paragraph states in full:

> Based on my training and observations of Mr. Bernardi's driving on New Year's Eve, I believed Mr. Bernardi was a possible drunk driver. I called the Grant County Sheriff Department ("dispatch"). I stated that I was off duty, I stated the color and license plate number

Dkt. 16, at ¶ 20.

The paragraph ends abruptly without any punctuation, so it may be that defendants inadvertently omitted a portion of the paragraph.  In any event, it is undisputed that the dispatch officer told defendant Caygill only that plaintiff was a "possible drunk driver."  Defendants do not argue that Caygill should be allowed to rely on information not given to her.

Defendants do not press that argument in their motion for reconsideration. Instead, they argue that the dispatch officer's statement may be evaluated like a tip from an inherently reliable source. This argument has two problems. First, it applies to defendant Caygill only. Obviously, defendant Klein would not be entitled to rely on his own tip when the facts underlying that tip are disputed.[2]

With respect to defendant Caygill, the problem is that the reliability of a source is only *part* of the analysis in determining whether information received from a third party provides reasonable suspicion. "Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police *and* its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330 (1990) (emphasis added). *See also Feathers v. Aey*, 319 F.3d 843, 851 (6th Cir. 2003) (when officers rely on report from other officer, they must still have "a sufficient factual basis for thinking that they were acting consistently with" Fourth Amendment). In other words, it makes no difference whether a source is reliable if the information provided lacks content. The dispatch officer's report of "a possible drunk driver" lacked content because the officer failed to provide any details or make the statement with any degree a certainty. The officer communicated nothing more than an "inchoate and unparticularized suspicion or 'hunch,'" which is not enough to satisfy the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

---

[2] Although it was Caygill who made the ultimate decision to stop plaintiff, there is a colorable argument that defendant Klein may be held liable because it was his report that triggered the stop. *Monroe v. Pape*, 365 U.S. 167, 187 (1961) (Section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions."); *see also Jones v. City of Chicago*, 856 F.2d 985, 993-94 (7th Cir. 1988) (police officers who gave knowingly false reports to prosecutor could be held liable for charging decision that relied on those reports); *Johnson v. Johnson*, 385 F.3d 503, 527 (5th Cir. 2004) (rejecting view that defendants could not be held liable because they only made recommendations). In any event, I need not resolve that question for the purpose of summary judgment because defendants do not develop an argument regarding Klein's personal involvement. *General Auto Service Station v. City of Chicago*, 526 F.3d 991, 1006 (7th Cir. 2008) (undeveloped arguments are waived).

Thus, I adhere to the conclusion in the summary judgment opinion that the dispatch officer's report "certainly justified Caygill responding to the scene to investigate, but it did not provide any actual support for a traffic stop." Dkt. 63, at 10.

The doctrine of qualified immunity does not help defendant Caygill because it is clearly established that the dispatch officer's statement was not enough to support a finding of reasonable suspicion. In addition to the general propositions established in cases like *White* and *Terry*, many courts have held that vague reports of possible wrongdoing are not enough to justify an investigative stop under the Fourth Amendment, even if they come from other officers. *E.g. Harris v. Commonwealth*, 668 S.E.2d 141, 146 (Va. 2008) (tip that driver was "intoxicated" not enough); *State v. Day*, 263 S.W.3d 891, 904 (Tenn. 2008) (signals from other driver who flashed her lights, waved at officer and pointed to defendant's SUV in front of her not enough; this showed that other driver "had witnessed the defendant do something that aroused her concern" but information was too "ambiguous" and not "specific" enough); *Ex parte Aaron*, 913 So.2d 1110 (Ala. 2005) (tip that suspect purchased several packages of over-the-counter cold medication containing pseudoephedrine, a precursor chemical ingredient in methamphetamine, not enough); *Joshua v. DeWitt*, 341 F.3d 430, 440 (6th Cir. 2003) (information from other police department that suspect was "a known drug courier" not enough); *U.S. v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000) (information from FBI agent that detective "might want to pay particular attention to a certain house" based on "a suspicion that there was a possibility that there might be some narcotics" not enough); *State v. Lee*, 938 P.2d 637, 638-40 (Mont. 1997) (caller's unexplained "belief" that driver was under influence of alcohol not enough); *United States v. Packer*, 15 F.3d 654, 658-59 (7th Cir. 1994) (tip regarding "suspicious" behavior not enough); *State v. Miller*, 510 N.W.2d 638, 640-45 (N.D.1994) (tip indicating that there was "possible

drunk driver" who "could barely hold his head up" in pickup truck in fast-food restaurant's drive-up lane not enough); *Garza v. State*, 771 S.W.2d 549, 558-59 (Tex. Ct. App. 1989) (information through police channels that suspect was "good for" recent burglaries not enough); *State v. Kettlewell*, 544 A.2d 591, 594 (1987) (tip from constable that he "did not know whether [two Mexicans] were legal or not legal" not enough); *Campbell v. State of Wash. Dept. of Licensing*, 644 P.2d 1219, 1220-21 (Wash. 1982) (tip of witness yelling to officer that "there was a drunk driver headed southbound" and describing vehicle not enough).

Although defendants cite many cases in their motion for reconsideration, they state incorrectly that these cases stand for the proposition that "a police officer may reasonably initiate a traffic stop based on a reliable report that the driver is possibly drunk." Dkt. 65, at 3. Rather, all of the cited cases involved tips including *specific facts* supporting the suspicion of drunk driving, observations supporting that conclusion by the officer herself or at least a firm conclusion that the driver was in fact intoxicated. *State v. Lohman*, 2008 WL 2466366, *1 (Wis. Ct. App. 2008) (nonprecedential unpublished opinion) (report that driver "stagger[ed] across the street" to his car and "fumbled with his car keys" before entering his car and driving away); *Washington County v. Vandenberg*, 2007 WL 840504, *2 (Wis. Ct. App. 2007) (nonprecedential unpublished opinion) (report that defendant was driving "radically drunk down the street" and "swerving around"); *State v. Powers*, 2004 WI App 143, 275 Wis. 2d 456, 460, 685 N.W.2d 869, 870-71 (after receiving tip officer viewed driver carrying beer and walking unsteadily to his car); *State v. Gowen*, 837 A.2d 297, 300 (N.H. 2003) (witness's account stating that driver was drunk); *State v. Kueht*, 2002 WL 31478743, *1 (Wis. Ct. App. 2002) (nonprecedential unpublished opinion) (report stated that vehicle was "veering out of its lane of traffic"); *State v. Rutzinski*, 2001 WI 22, 241 Wis. 2d 729, 733, 623 N.W.2d 516, 519 (report indicated that

5

vehicle was "weaving," "varying its speed from too fast to too slow" and "tailgating"); *U.S. v. Wheat*, 278 F.3d 722, 724 (8th Cir. 2001) (report that car was "passing on the wrong side of the road, cutting off other cars, and otherwise being driven as if by a 'complete maniac.'"); *State v. Boyea*, 765 A.2d 862, 863 (Vt. 2000) (police report of erratic driving); *State v. Gordon*, 1998 WL 142314, *1 (Wis. Ct. App. 1998) (unpublished nonprecedential opinion) (tip described near-accident caused by driver); *Rittman v. State ex rel. Dept. of Public Safety*, 875 P.2d 439, 441 (Okl. App. 1994) (witness statement describing "behavior [that] was indicative of drunkenness" followed by officer's own corroborating observations). None of these cases suggest that an officer may conduct a stop on the basis of a vague, equivocal statement like the one provided by the dispatch officer in this case.

The case cited by defendants that may be most similar to this case is *State v. Ramey*, 717 N.E.2d 1153 (Ohio Ct. App. 1998), in which the court upheld a stop involving a tip of "a possible DUI." Although that case is distinguishable as well because the tip included a statement that the "vehicle had been observed driving erratically," *id.* at 1155, it is not clear whether the court relied on that portion of the tip to uphold the stop.  The court wrote that

> the discovery of a vehicle matching in several particulars the vehicle described in the radio broadcast should have been sufficient corroboration of the motorist's report, and the observation of weaving (whether within or without the lines) served only to further justify the stop.

*Id.* at 1159.

Even if I concluded that *Ramey* supports defendants' position, this would not mean that defendant Caygill was entitled to qualified immunity.  The cases reviewed by this court and those cited by defendants suggest that *Ramey* is an outlier.  The *Ramey* court seems to have focused on the reliability aspect of reasonable suspicion (by discussing the officer's discovery of

6

a car matching the description in the broadcast) and more or less ignored the content aspect, which is inconsistent with *White*. Even the *Ramey* court acknowledged that its result may have been inconsistent with a previous holding by the same court. *Id.* at 1159. "[T]he fact that a single judge, or even a group of judges, disagrees about the contours of a right does not automatically render the law unclear if [the Supreme Court has] been clear." *Safford Unified School Dist. No. 1 v. Redding*, 129 S. Ct. 2633, 2643 44 (2009). Because both the Supreme Court and the vast majority of other courts have made it clear that reasonable suspicion is not established by a vague statement of a "possible" crime, I am denying defendants' motion for reconsideration.

ORDER

IT IS ORDERED that the motion for reconsideration filed by defendants Brian Klein and Mandy Caygill, dkt. 64, is DENIED.

Entered this 25th day of January, 2010.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge